C. M. HILLIKER ET AL., Appellees, v. NORTHWEST
THRESHER COMPANY, Appellant.

**Agency contract:** COMMISSIONS. Under an agency contract for the sale of machinery at a certain place and contiguous territory, for a certain season and terminating at a specified date, it is held that such agent was not entitled to commissions on a sale made by another agent, after the termination of his contract, to a customer formerly living within his territory but who had prior to the termination of his contract moved to another part of the State.

**Same.** Under an agency contract for the sale of machinery contemplating the cutting of prices and providing that no commission should be paid unless the sale price exceed the net price given the agent, such agent is not entitled to commissions on a sale made by another, to one claimed to be his customer, at a price less than the net price offered such agent.

**Same.** The contract in this case provided that when other property was taken in exchange for the machinery sold no commission should be allowed the agent, unless the proceeds of the property taken in exchange, together with the notes received from the purchaser, should exceed the net price to the agent of the machinery sold. *Held,* that a sale by another agent in plaintiff's territory, where the net amount received, both in notes and machinery taken in exchange, was less than the net price of the machinery sold, plaintiff was not entitled to any commission under his contract.

*Appeal from Woodbury District Court.*—HON. WILLIAM
HUTCHINSON, Judge.

TUESDAY, OCTOBER 26, 1909.

REHEARING DENIED TUESDAY, FEBRUARY 15, 1910.

THIS is an action in equity on a contract. The relief

prayed is in the nature of a specific performance. There was a decree for the plaintiff, and the defendant appeals.— *Reversed.*

*Sullivan & Griffin,* for appellant.

*Wright, Call & Sargent,* for appellees.

Evans, C. J.—The plaintiffs consist of a copartnership and its two members. Inasmuch as the business involved was transacted by the senior partner, we will, for convenience, refer to him as the plaintiff. The plaintiff was an owner of a repair and machine shop at Akron, Iowa. The defendant was a manufacturer of threshing machines and engines. In December, 1905, a written contract was entered into between the parties, whereby the plaintiff was appointed as the agent of the defendant for the sale of threshing machines and engines in the "town of Akron and trade tributary thereto, in the state of Iowa, for the season ending November 1, 1906, except as to the unsettled business arising under this agreement." It was provided therein that upon all sales made by the plaintiff he should receive a commission in the form of a discount of twenty-five percent off from certain specified list prices, provided, however, that the net amount to be received by the company should not be less in any case than certain specified net prices. The contract contemplated and provided that the season should close November 1, 1906, except for the settlement of unfinished business. The petition alleged that in November, 1906, the defendant, through one Peterson, sold within his territory an engine to Fred and Sol Lee, and an engine and separator and wind stacker to Dave Nelson, and that the plaintiff was entitled to a commission on such sales. By an amendment it was averred that the sales were made by Peterson by reducing the price without the consent of the plaintiff, and also that Peterson induced the

customers to delay the purchase until after November 1st for the purpose of defeating the plaintiff in his commission, and it was averred that the sales were in fact consummated as a result of the agency of the plaintiff. The defendant in its answer denied these allegations, and justified all its acts under the terms of the contract.

I. As to the sale of the separator, the evidence developed a state of facts which were not contemplated by the pleader. This separator was sold by Peterson to Nelson, not in November, but in July, confessedly during the life of plaintiff's contract. Nelson, the purchaser, had formerly lived about eight miles from Akron, but in the spring of 1906, he moved to Spirit Lake which was one hundred miles distant from Akron. He had been engaged in the threshing business for many years in Plymouth County, and had owned successive outfits, two of which had been sold to him by Peterson in former years. He was well known to Peterson, as well as to the plaintiff. Peterson sold to him the separator in question at Spirit Lake. In pursuance of the order of sale it was delivered later at Alcester, S. D. The claim of the plaintiff by his testimony is that he had solicited Nelson as a customer for several years successively, but had never been able to make a sale to him. In the summer of 1906 he spoke to Peterson about him as a customer, and was informed by Peterson that he lived at Spirit Lake. Peterson said he would go up to see him. The plaintiff told Peterson to protect him in his commission, which Peterson agreed to do. This is denied by Peterson. Accepting the plaintiff's statement of the facts at this point, we see no way of recovery for him. He concedes that Spirit Lake was outside of his territory. But he relies upon this verbal arrangement with Peterson. Peterson had no authority to modify the contract sued on. It is not claimed that he did modify it. The only way that plaintiff can avail himself of this verbal arrangement with Peterson is to say that Peter-

*1. AGENCY CONTRACT: commissions.*

son thereby became his agent for the making of such sale, and that he is entitled to claim the contract as his own.

He also complains that Peterson made the sale at a reduced price without his consent, and at a price which he himself was not permitted to make. These two positions are inconsistent, and the plaintiff does not stand consistently upon either one. It is undisputed that the sale made by Peterson at this time was for an amount which was $6 less than the net price, and that thereby all the discount had been given to the purchaser. If, therefore, the plaintiff claims the benefit of the contract as made, he is barred from claiming any commission by the very terms of his contract. If he can complain of the reduction of price without his consent, it must be upon the theory that Peterson was acting for the company in making such sale. But the contract sued on in no sense forbade the company to make sales in such territory, nor did it permit the plaintiff to make any at such place. If reliance be placed upon the verbal arrangment with Peterson as a new contract, such is not the contract sued on, nor is it referred to in any manner in the pleadings. Suit is brought upon the written contract, and it is not claimed in the pleadings that it was ever modified. Nor would there be any warrant for holding that Peterson had any authority to modify it. The trial court allowed the plaintiff such a commission upon this sale as would have been earned if the plaintiff had sold the separator for the full list price. Under the contract neither party was required to maintain the list price. On the contrary, the contract contemplated a cutting of prices, and expressly provided that there should be no commission on the sale unless the price received exceeded the net sum specified. There is no ground in the evidence for holding that either plaintiff or Peterson could have sold the separator in question to Nelson for a dollar more than was finally bargained for. We think, therefore, that the plaintiff failed to show a right of recovery on this item.

2. SAME.

.II.   On November 5, 1906, Peterson made an ex-
change with Nelson of a new engine for an old one.   The
list price of the new engine was $2,650.   The net price was
$1,972.50.   Peterson received for it, in addi-
3. SAME.            tion to the old engine, $1,400.   The com-
pany realized out of the old engine a net amount of $565.
So that the sum actually realized was $1,965 for the new
engine.   The trial court found that the plaintiff was entitled
to recover the difference between the net price and the list
price.   The claim and argument on behalf of plaintiff is
that the plaintiff was prevented from selling this engine
to Nelson at the list price because of this reduction of price.
There is no basis in the testimony for this argument, except
the natural inference that no purchaser would pay a larger
price for an article if he could purchase it for a lesser
price.   Plaintiff's claim in his testimony was that he had
solicited Nelson as a purchaser for several years successive-
ly, but had never been able to sell him anything.   He had
no negotiations pending with Nelson at the time his con-
tract terminated, unless it can be found from the following
statement in his testimony:   "In a way he promised to
buy an engine of me.   He said it was getting late, and he
couldn't get it here in time.   But he said 'We will have it
next year.'   We talked about the terms of trading in his
other machinery, but we never agreed."   It is manifest
from this testimony that the plaintiff had no expectation of
making a trade with Nelson until "next year," and he had
no contract of agency for next year.   The season was
deemed closed on November 1st, and the contract, by its
terms, expired on that date.   The right of the defendant to
deal with Nelson on November 5th was as complete as it
would have been on any subsequent date.   It is claimed at
this point, however, that Peterson induced Nelson to wait
until after November 1st, for the very purpose of defeating
the plaintiff.   The evidence does not warrant this claim,
nor is there any evidence, direct or circumstantial, that

would warrant the belief that the plaintiff could have traded with Nelson at any better price than was done by Peterson. The season was over. Nelson was an experienced thresher and purchaser. He doubtless knew the advantages of price to be obtained by purchase at the close of the season instead of at the beginning. He had known Peterson for years, and had twice before purchased machinery from him. He had never purchased anything substantial from the plaintiff. He wrote to Peterson, and it was in response to his letter that Peterson visited him and consummated his trade. His testimony is clear that he was not contemplating any purchase from the plaintiff, and that he would not have purchased from him at the prices quoted. No fraud, either actual or legal, was therefore perpetrated upon the plaintiff. It may be noted here that the contract expressly provided that when other property was taken in exchange, no commission should be allowed upon such property, and that no commission should be allowed upon such sale unless the net proceeds of such property received in exchange added to the money and notes received from the purchaser, should exceed the specified net price to the company. In the absence of fraud, this provision alone would preclude the plaintiff from recovering any commission upon this sale, even though it had been consummated during the life of the contract. We are of the opinion that the plaintiff is entitled to nothing on this branch of the case.

III. On the same date that Peterson made the trade with Nelson he made a similar trade with one Fred Lee, taking an old engine in exchange and receiving $1,400 of difference. The amount realized on the old engine was much less than the amount realized on Nelson's old engine, and the net proceedings of the sale were more than $200 below the net price specified in the contract sued on. It is claimed by plaintiff that he had talked with Fred Lee, but more particularly with Sol Lee. Sol Lee was not a

purchaser, but signed the notes of Fred Lee as surety. Fred Lee testified that he never had talked with the plaintiff on the subject of buying an engine from him, and that he never knew that the plaintiff was agent for such engines until after he had purchased from Peterson. No negotiations were pending between him and the plaintiff, and he did not contemplate a purchase from him at any time. The two trades made by Peterson were made at Chatsworth, which is located about seven miles from Akron and six miles from Hawarden, where defendant had another agency. The plaintiff makes the same claim of fraud on the part of Peterson with reference to the sale to Lee as has already been noticed in connection with the Nelson claim, but such claim is not sustained by the evidence. Much of what we have already said in the preceding division is applicable here. We are unable to see merit in plaintiff's claim on this item. One other claim sued on was disallowed by the trial court, and we have no occasion to consider it. We are satisfied that the defendant acted within its rights under its contract.

The plaintiff has no just ground of complaint under this record. The decree entered below must therefore be *reversed*.